UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DARYL PETITT,
  *Plaintiff*,

v.              No. 3:20-cv-00973 (JAM)

BADURA *et al.*,
  *Defendants*.

**ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Daryl Petitt is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA") and asserted unspecified state law claims. Petitt alleges in essence that defendants endangered him by removing a syringe filled with heparin that was connected to a dialysis port on his body. After an initial review, I conclude that his federal law claims should be dismissed without prejudice as set forth in the ruling below.

**BACKGROUND**

Petitt names four defendants: Steven Badura, Lieutenant Truoiolo, former DOC Commissioner Rollin Cook, and the Connecticut DOC in their individual and official capacities, and asks for compensatory, punitive, and monetary damages, and a declaratory judgment. Doc. #1 at 1-2. The events underlying this action occurred while Petitt was housed at Carl Robinson Correctional Institution ("Robinson"), Osborn Correctional Institution ("Osborn"), and MacDougall Correctional Institution ("MacDougall"). *Id.* at 2.

The following facts are alleged in the complaint and accepted as true for purposes of initial review only. On January 25, 2019, while incarcerated at Robinson, Petitt experienced full chronic renal failure and was brought to the University of Connecticut Emergency Medical

Center. *Id.* at 4 (¶¶ 1-2). There, he underwent emergency surgery for placement of a "perma-cath" in a heart valve for direct dialysis access to address his renal failure. *Id.* at 4 (¶¶ 3-4). The next day, while hospitalized, Petitt received dialysis treatment for the first time. *Id.* at 4 (¶ 5). He was told that he would need dialysis for the rest of his life unless he received a kidney transplant. *Id.* at 4 (¶ 6).

Dialysis was scheduled for three times per week. *Id.* at 4 (¶ 7). Petitt received his second dialysis treatment on January 28. *Id.* at 5 (¶ 8). Four hours after the second treatment concluded, Petitt was discharged from the hospital and transferred to the medical unit at Osborn. *Id.* at 5 (¶ 9). On January 30, Petitt was taken to MacDougall. *Id.* at 5 (¶ 10). He was told that he would receive his dialysis treatments at MacDougall on Mondays, Wednesdays, and Fridays. *Ibid.*

After returning to Osborn, Petitt "felt something pulling on his chest" and called for the personnel in the medical unit. *Id.* at 5 (¶ 11). After Petitt removed his shirt, defendant Badura, part of the medical staff at Osborn, found that there was a full 3mL flush syringe connected to the perma-cath direct dialysis port. *Id.* at 5 (¶ 12). When Badura went to remove the syringe, Petitt argued with him and asked whether the port should be flushed before disconnecting the syringe. *Id.* at 6 (¶¶ 13-14). Badura said he did not know what was in the syringe and that he was not authorized to touch the port. *Id.* at 6 (¶ 15). Petitt asked Badura to find someone who was authorized. *Id.* at 6 (¶ 16).

Badura then gave Petitt a "direct order" to permit him to disconnect the syringe, *id.* at 6 (¶ 17), which Petitt refused, telling Badura to get his supervisor, *id.* at 6 (¶ 18). Badura instead called a custodial officer, defendant Lieutenant Truoiolo, to the medical unit, stating that he "had a non compliant inmate and needed assistance." *Id.* at 6 (¶ 19). After hanging up the phone, Badura told Petitt, "[N]ow you can go to segregation (R.H.U.)." *Id.* at 7 (¶ 20).

When Lieutenant Truoiolo arrived in the medical unit, Petitt told him what happened. *Id.* at 7 (¶ 21). Lieutenant Truoiolo gave Petitt a "direct order" to allow Badura to disconnect the syringe. *Id.* at 7 (¶ 22). Petitt told Lieutenant Truoiolo, "[Y]ou are custody, not medical personel [sic]," and insisted that pictures be taken of the syringe. *Id.* at 7 (¶ 23). Lieutenant Truoiolo told Petitt to let Badura disconnect the syringe, and that Lieutenant Truoiolo would take pictures and file an incident report. *Id.* at 7 (¶ 24). At his next dialysis treatment, Petitt was told that the syringe contained heparin, a medication used to flush the dialysis port and prevent his blood from clotting after the dialysis treatment. *Id.* at 8 (¶ 25).

Early in February 2019, Petitt began to experience shoulder, chest, and neck pain. *Id.* at 8 (¶ 26). An examiner at Osborn diagnosed Petitt with arthritis and took an x-ray. *Ibid.* On February 16, Petitt was admitted to the hospital "on an emergency basis" due to the pain. *Id.* at 8 (¶ 27). There, Petitt was placed on a heparin drip. *Id.* at 8 (¶ 28). On February 19, Petitt was continued on the heparin drip because a blood clot was found in his neck. *Id.* at 8 (¶ 29). Petitt remained on the heparin drip and was given pain medication for his shoulder, chest, and neck pain. *Id.* at 9 (¶ 31). After several days, Petitt was discharged and taken to MacDougall where "dialysis program and trained personel [sic] are authorized to treat" him. *Id.* at 9 (¶ 32). Petitt alleges that he was told the "blood clot due to its location could move and in fact cause death." *Id.* at 10 (¶ 37).

Petitt alleges that he has "taken numerous emergency room visits" due to "Badura's cruel, and deliberate actions," and that Badura and Lieutenant Truoiolo engaged in "negligent behavior as well as malpractices." *Id.* at 9-10 (¶¶ 33, 39). Petitt brings these claims under the ADA and 42 U.S.C. § 1983, in addition to unspecified state law claims.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *ADA Claims*

The ADA undoubtedly applies to state prisons and prisoners. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). In order to prevail on a claim under Title II of the ADA, a plaintiff must show that (1) "he is a qualified individual with a disability" and that (2) "he was denied the opportunity to participate in or benefit from [the defendant's] services, programs, or activities [or that the defendant] otherwise discriminated against him by reason of his disability." *Ibid.* This second prong "requires the disabled plaintiff to allege that his or her mistreatment 'was motivated by either discriminatory animus or ill will due to disability.'"

*Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F.Supp.2d 590, 595 (S.D.N.Y. 2010) (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001)).

For the purposes of this initial review, I assume that Petitt's renal failure and need for dialysis treatment three times a week is recognized as a disability under the ADA. *See Gilbert v. Frank*, 949 F.2d 637, 641 (2d Cir. 1991) ("We are inclined to view persons . . . whose kidneys do not function sufficiently to rid their bodies of waste matter without regular dialysis, as being substantially limited in their ability to care for themselves."). However, Petitt does not allege any facts to suggest that any of the named defendants denied him the opportunity to participate in or benefit from the defendants' services, programs, or activities, or that they have otherwise discriminated against him by reason of his disability. While Petitt asserts that Badura's actions were "cruel and deliberate" and that Lieutenant Truoiolo and Badura "conspired . . . to not follow protocols," Doc. #1 at 9 (¶¶ 33-34), Petitt does not allege any facts to indicate that Lieutenant Truoiolo and Badura acted as he alleges they did *because* of Petitt's disability.

Petitt does allege that the DOC "only has one mens [sic] dialysis unit and housed Plaintiff in a facility with untrained medical personel [sic]," and that Badura, Lieutenant Truoiolo, and the DOC "need[] to be held accountable for . . . negligent behavior as well as malpractices," leading to Petitt "tak[ing] numerous emergency room visits" due to Badura's actions. Doc. #1 at 9-10 (¶¶ 33, 36, 39). But the ADA does not apply "to claims regarding the quality of medical services provided by correctional departments or provide a remedy for medical malpractice." *Montgomery v. Dep't of Corr.*, 2017 WL 5473445, at *2 (D. Conn. 2017); *see also Cercpac v. Health & Hosps. Corp.*, 147 F.3d 165, 168 (2d Cir. 1998) ("[T]he disabilities statutes do not guarantee any particular level of medical care for disabled persons, nor assure maintenance of service previously provided."). "Courts routinely dismiss ADA suits by disabled inmates that

allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert*, 751 F.Supp.2d at 595 (collecting cases). Accordingly, I will dismiss Petitt's claim under the ADA against all defendants for failure to allege a plausible ground for relief.

### *Eighth Amendment*

Petitt alleges that he received improper medical treatment and that Badura and Lieutenant Truoiolo "need[] to be held accountable for violating numerous civil rights and negligent behavior as well as malpractices," but does not identify which civil rights the defendants are alleged to have violated. Doc. #1, at 10 (¶ 39). The Court construes Petitt's allegations as asserting an Eighth Amendment claim over inadequate medical care.

"An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of 'deliberate indifference to [a prisoner's] serious medical needs.'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on such a claim, a plaintiff must prove that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)). "Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—'an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" *Hill*, 657 F.3d at 123 (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

To be "sufficiently serious," the deprivation of medical care must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Id.* at 122. This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. Factors to consider include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702.

Heparin is "administered to prevent blood clots." *Fisher v. APP Pharmaceuticals, LLC*, 783 F.Supp.2d 424, 427 (S.D.N.Y. 2011). Petitt was informed that heparin was used to flush his dialysis port and prevent his blood from clotting after treatment, Doc. #1 at 8 (¶ 25), and alleges that a blood clot was found in his neck in February, *id.* at 8 (¶ 29), which, "due to its location could move and in fact cause death," *id.* at 10 (¶ 37). Petitt's claim seems to be that by removing the syringe filled with heparin from the port, Badura deprived him of the dose of heparin and that this missed dose contributed to his later blood clot diagnosis. Accepting the pleaded facts as true and considered in the light most favorable to Petitt, this Court assumes that Petitt has a serious medical need for heparin.

To satisfy the subjective element of the deliberate indifference inquiry, the defendant "must act with a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280. This requires more than mere negligence. *Ibid.* It "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Ibid.* It is not required that the defendants "desire to cause such harm or be aware that such harm will surely or almost certainly result"; rather, the plaintiff must only allege "awareness of a substantial risk of the

harm." *Ibid.* Finally, a defendant "must be subjectively aware that his conduct creates such a risk." *Id.* at 281.

Petitt admits that Badura stated he did not know what was in the syringe, Doc. #1 at 6 (¶ 15), and Petitt pleads no facts to suggest that either Badura or Lieutenant Truoiolo, a custodial officer, actually knew what was in the syringe. Without knowledge of the syringe's contents, Badura and Lieutenant Truoiolo would not be aware of a substantial risk that serious harm would result to Petitt by removing the syringe before flushing it. Petitt does not allege sufficient facts from which I can infer that Badura and Lieutenant Truoiolo were subjectively aware that their conduct created a substantial risk of harm to Petitt. While Badura and Lieutenant Truoiolo's actions in failing to contact another individual in the medical unit with knowledge of Petitt's treatment or find someone who was authorized to touch Petitt's port could be negligent, they do not rise to the level of recklessness necessary to satisfy the subjective element of the deliberate indifference test. Accordingly, I will dismiss Petitt's Eighth Amendment claim against Badura and Lieutenant Truoiolo.

### *DOC and Commissioner*

Petitt also includes the DOC and former DOC Commissioner Cook as defendants. But because Petitt has not alleged any plausible grounds for liability against Badura or Lieutenant Truoiolo, he has not alleged grounds to hold liable the DOC or its commissioner.

## CONCLUSION

For the reasons stated above, the Court DISMISSES Petitt's federal law claims without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). To the extent that the complaint may be construed to allege state law claims, the Court declines to exercise supplemental jurisdiction over

any state law claims pursuant to 28 U.S.C. § 1367.

The Clerk of Court shall close this case. If Petitt is able to allege additional facts that show valid grounds to proceed under federal law against any defendant, he may file a motion to reopen this action along with an amended complaint by **October 28, 2020**.

It is so ordered.

Dated at New Haven this 7th day of October 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge